UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) | |
| | ) | Civil Action No. 6:21–CV–132–CHB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| WENDY BREWER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on its own Order [R. 25] requiring the parties to show cause as to whether the Court should exercise jurisdiction over Plaintiff State Farm Fire and Casualty Company's ("State Farm") request for declaratory relief pursuant to 28 U.S.C. § 2201. [R. 1]. State Farm and Defendants Wendy Brewer, Jenny West, Jay Sowders,[1] Elaine Elliot, and Brandon Roark filed memoranda addressing the issue. [R. 26; R. 29; R. 30; R. 31].[2] In addition, Defendant Elaine Elliot filed a Motion to Dismiss, [R. 27]. State Farm responded, [R. 32], and Elliot replied, [R. 33]. This matter is now ripe for review. For the reasons stated herein, the Court declines to exercise its discretionary jurisdiction over State Farm's declaratory judgment action and grants Elliot's Motion to Dismiss.

I.      **Background**

---

[1] The state court complaint lists Harry Sowders as a defendant while State Farm's Complaint lists Jay Sowders as a defendant. *See* [R. 27–1, p. 1; R. 1, p. 2]. However, both complaints use the same address under each name (687 Bramblewood Drive, Corbin, Kentucky 40701), and neither complaint lists the names separately, as though Harry and Jay Sowders are two separate persons. *See* [R. 27–1, p. 2; R. 1, p. 4]. Accordingly, for the purposes of this motion, the Court assumes that Jay Sowders and Harry Sowders are the same person.

[2] Defendants Justin A. Bray and Pamela Sears have yet to appear on the record.

**A.  The Knox Circuit Court Action**

The underlying state court action stems from a vehicle collision in Knox County, Kentucky. On November 27, 2020, Jeffrey Sears was traveling as a passenger in a vehicle operated by Justin Bray. [R. 27–1, p. 5, ¶ 13]. The two men were traveling Kentucky Highway 225, in Artemus, Knox County, Kentucky, when their vehicle collided with "a bull standing in the middle" of the highway. *Id.* As a result of the collision, both Bray and Sears suffered bodily injuries. *Id.*; *see also* [R. 31, p. 2]. While Bray survived his injuries, Sears, unfortunately, did not. [R. 27–1, p. 5, ¶ 13]; *see also* [R. 31, p. 2]. As a result, Pamela Sears, the administrator of Sears' estate, filed the underlying state court action against Brandon Roark, Johnny Bays, Jenny West, Wendy Brewer, Elaine Elliot, and Harry Sowders in Knox County Circuit Court on November 24, 2021. [R. 27–1, p. 1].

According to the complaint, Brandon Roark owned, supervised, and cared for the escaped bull. *Id.* at 5 ¶ 13. Sears alleges the bull escaped into the road from its pastures, owned by Elaine Elliot, Jenny West, Wendy Brewer, and Harry Sowders, because it was "negligently supervised," and the pastures were "insufficient[ly] and poorly" fenced and maintained in a "grossly negligent manner." *Id.* ¶¶ 13–14. The complaint seeks damages for wrongful death, loss of parental consortium, compensatory damages, and punitive damages. *See generally id.*; *see also* [R. 26, p. 3].

**B.  The Present Action**

State Farm, Wendy Brewer and Jenny West's insurer, *see* [R. 31, p. 1], is not a party to the underlying state court action. *See* [R. 27–1]; *see also* [R. 29, p. 2, ¶ 3 ("[State] action includes the same parties named in this litigation, with the exclusion of State Farm Fire and Casualty Company.")]. On August 6, 2021, State Farm filed this declaratory judgment action against

2

Wendy Brewer, Jenny West, Jay Sowders, Elaine Elliot, Justin Bray, Pamela Sears, and Brandon Roark, seeking a declaratory judgment regarding its obligations to defend and indemnify Brewer and West in the Knox Circuit Court action. [R. 1]; *see also* [R. 31, p. 1]. Specifically, State Farm asserts that there is a dispute over whether the claims against Brewer and West in the state court action are covered events under their respective insurance policies. [R. 1, p. 4, ¶ 15].

As described by State Farm, on the date of loss, Brewer was covered by a State Farm homeowners' policy ("HO Policy") and West was covered by a State Farm HO Policy and manufactured home policy ("MH Policy"). [R. 1, pp. 3–4, ¶¶ 13–14]; *see also* [R. 31, p. 2; R. 31–4, Ex. D (Brewer's HO Policy); R. 31–5, Ex. E (West's MH Policy)].[3] Under both the HO Policy and the MH Policy, State Farm is liable for damages due to covered "bodily injury … caused by an occurrence [.]" [R. 31, pp. 2–3; R. 31–4, Ex. D, p. 36; R. 31–5, Ex. E, p. 26]. Both policies also extend coverage for medical expenses for bodily injury caused by accidents. [R. 31, p. 3; R. 31–4, Ex. D, p. 36; R. 31–5, Ex. E, p. 26]. As a result, and due to the nature of the claims against Brewer and West, State Farm concedes that "the policies' insuring clauses *initially* extend liability and MPC coverage to West and Brewer." [R. 31, p. 3 (emphasis added)]. However, State Farm asserts that coverage is still not available to Brewer and West because the claims are subject to an exclusion. *Id.* Specifically, State Farm argues that the pastures from which the bull escaped are not "insured location[s]" under either the HO Policy or the MH Policy. *Id.* at 3–4. Accordingly, State Farm requests a declaratory judgment that, due to the exclusion of coverage, State Farm does not have a duty to defend or indemnify Brewer and West in the Knox Circuit Court action. *Id.* at 4.

---

[3] Brewer and West have the same HO Policy. Consequently, State Farm did not attach West's HO Policy as a separate exhibit. [R. 31, p. 3 n.5].

On September 10, 2021, Brewer, Elliot, Sowders, and West filed their answer to the declaratory judgment complaint. [R. 13]. Twelve days later, Roark filed his answer. [R. 14]. On April 21, 2022, the Court ordered the parties to brief the issue of whether the Court should exercise its discretion to accept jurisdiction under the Declaratory Judgment Act. [R. 25]. The Parties have fully briefed the issue. [R. 26; R. 29; R. 30; R. 31].[4] In addition, Defendant Elaine Elliot filed a Motion to Dismiss, [R. 27], identical to her Response [R. 26] to the Court's Order [R. 25]. State Farm responded, [R. 32], and Elliot replied, [R. 33].

## II.   Analysis

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). As the use of the permissive "may" suggests, "a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so." *Grange Mut. Ins. Co. v. Safeco Ins. Co. of America*, 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942)). Rather, "this act '[c]onfers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

However, "[d]istrict courts must exercise this discretion cautiously." *Id.*; *see also W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (explaining that Court's discretion

---

[4] Defendants Brewer, West, Sowders, and Roark joined Defendant Elliot's arguments as presented at [R. 26]. *See* [R. 29; R. 30]. Accordingly, when analyzing Elliot's Response [R. 26], the Court collectively addresses all the Defendants' arguments. Further, because Elliot's Response is identical to her Motion to Dismiss, *compare* [R. 26], *with* [R. 27], the Court will not address it separately, but will incorporate it, State Farm's Response [R. 32], and Elliot's Reply [R. 33] into its analysis.

4

under the Declaratory Judgment Act "must not be unguided"). As this Court previously

explained, "We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter

does nothing more than cause the parties to engage in litigation on two fronts, we are neither

furthering the interests of justice nor preserving parties' resources." *Grange*, 565 F. Supp.2d at

785 (internal citations omitted). The Sixth Circuit has similarly "cautioned district courts not to

jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an

advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another

court." *Id.* (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir.

2004)) (internal quotation marks omitted). Nevertheless, "no per se rule exists against exercising

jurisdiction" under the Declaratory Judgment Act. *Id.* (citing *Bituminous*, 373 F.3d at 812–13).

The Sixth Circuit has identified two general principles to determine whether it would be

appropriate to accept jurisdiction over a declaratory judgment action:

> The two principal criteria guiding the policy in favor of rendering declaratory
> judgments are (1) when the judgment will serve a useful purpose in clarifying and
> settling the legal relations in issue, and (2) when it will terminate and afford relief
> from the uncertainty, insecurity, and controversy giving rise to the proceeding. It
> follows that when neither of these results can be accomplished, the court should
> decline to render the declaration prayed.

*Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation

omitted). With these general principles in mind, the Sixth Circuit articulated five factors to guide

district courts as they consider whether to exercise jurisdiction under the Declaratory Judgment

Act:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the
>     legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of
>     "procedural fencing" or "to provide an arena for a race for res judicata;"
> (4) whether the use of a declaratory action would increase friction between our
>     federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted). The Court considers each of the *Grand Trunk* factors in turn.

### A. Factor One

The first *Grand Trunk* factor asks "whether the declaratory action would settle the controversy." *Id.* In the Sixth Circuit, "[t]wo lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 555 (6th Cir. 2008). The key distinction between these two lines of precedent is whether the declaratory action must settle the controversy in the state court action, or whether it need only settle the insurance coverage dispute. Some cases hold that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (citations omitted). "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court. *Id.* (citations omitted).

The Sixth Circuit has explained the reasoning for this split:

> The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible. However, the contrary results in these cases might also be explained by their different factual scenarios. In [*Bituminous Casualty Corporation v. J & L Lumber Co.*] for example, the insurance company sought a declaration that it was not required to defend or indemnify the defendant in a state court action based on a logging accident which injured one of its employees. In evaluating this first discretionary factor, we focused on the fact that the insurance coverage controversy rested on a fact-based question of state law regarding whether the plaintiff in the state action was actually an employee of the defendant. We noted that the question of employment status was already being considered in two separate state court proceedings. We also registered our concern that the plaintiff in the state tort action "was not made a party to the declaratory judgment action [and thus] any judgment in the federal court action would not be

6

binding as to him and could not be res judicata in the tort action." Considering these facts, we found that "a declaration of insurance coverage would not resolve the controversy."

In [*Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448 (6th Cir. 2003)] we did not face similarly troubling facts. The plaintiff in that case sought a declaration of no duty to defend or indemnify the insured title company against a title insurance underwriter's state court claims for embezzlement and conversion. In determining that the exercise of jurisdiction was proper, we noted that the plaintiff "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." We relied on these facts to find that a declaratory judgment would resolve the insurance coverage controversy and would clarify the legal relations at issue.

*Id.* at 555–56 (internal citations omitted). Thus, this factor presents competing policy considerations and a case-specific inquiry.

State Farm seeks a declaration from the Court as to whether it owes a duty to defend and indemnify Brewer and/or West under its HO Policies and MH Policy. *See* [R. 31, p. 8].[5] In its Response, State Farm contends that "[m]aking this determination will involve confirmation of limited facts … and application of straightforward Kentucky law regarding … insurance policy provisions," and, therefore, factor one weighs in favor of the Court exercising jurisdiction. *Id.* In addition, State Farm argues that factor one favors jurisdiction because there is no pending state court proceeding on the coverage issue. *Id.* Defendants counter that factor one weighs against exercising jurisdiction because "adjudication of the Underlying Fact Issues and the State Law Issues must occur before any determination regarding insurance coverage can be made." [R. 26, p. 6].

The Court agrees with State Farm that "there is no state court proceeding in which the coverage issue … is being litigated." *United Specialty*, 936 F.3d at 398. The Court also notes that, apart from Johnny Bays, the parties in the Knox Circuit Court litigation are also before this

---

[5] Only West was insured by the MH Policy. *See* [R. 31, p. 2].

Court. *Compare* [R. 1], *with* [R. 27–1]. Thus, this Court's declaratory judgment would have a "binding effect on most, if not all, parties potentially financially affected." *United Specialty*, 936 F.3d at 397–98. However, State Farm's argument that the Court can determine State Farm's duties via a "straightforward" application of Kentucky law is not persuasive. [R. 31, p. 8].

State Farm's declaratory judgment requires the Court to determine (1) whether State Farm has a duty to defend Brewer and/or West, and (2) whether State Farm has a duty to indemnify Brewer and/or West for any judgment awarded against them in the Knox Circuit Court action. *See id.* at 1; *see also* [R. 1]. As to the duty to defend, a court usually need not require factual determinations from the underlying suit before determining an insurance company's defense obligations. *See Frankenmuth Mut. Ins. Co. v. Balis Campbell, Inc.*, 510 F. Supp.3d 482, 492 (E.D. Ky. 2020). Rather, the duty to defend is a legal question that can be resolved by courts by comparing the state court complaint's allegations to the relevant insurance policy. *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) (explaining the insurer has a duty to defend if the complaint's allegations even potentially come within the policy coverage). Thus, to determine whether an insurance company has a duty to defend in an underlying action, a court would simply have to determine "if there is any allegation [in the state court complaint] which potentially, possibly or might come within the coverage of the policy." *James Graham Brown Found.*, 814 S.W.2d at 279 (citing *O'Bannon v. Aetna Cas. and Sur. Co.*, 678 S.W.2d 390 (Ky. 1984)).

However, in this case, the Court is not convinced that State Farm's duty to defend can be determined solely on the state court complaint and the HO Polices and MH Policy. State Farm concedes that both the HO Policies and MH Policy "initially extend" coverage to Brewer and West but argues that such coverage is foreclosed because the pasture from which the bull

8

escaped is not an insured location as defined by either Policy. [R. 31, p. 3]. Under the HO

Policies, an insured location is defined as:

> 10. "insured location" means:
>     a. the **_residence premises_**;
>     …
>
>     h. vacant land owned by or rented to an **_insured_**. For the purposes of this
>     definition, vacant land does not include:
>          (1) farm land;
>          (2) land containing a residence; or
>          (3) land containing fences, corrals, boat docks, tool shed, barns,
>          grain bins, and similar structures, unless they are used solely for the
>          personal use of the insured; or
>
>     i. farm land (without buildings), rented or held for rental to others, but not
>     to exceed a total of 500 acres, regardless of the number of locations.

[R. 31–4, Ex. D, pp. 15–16 (emphasis in the original)]; *see also* [R. 31, pp. 3–4]. West's MH

Policy contains a similar definition. *See* [R. 31–5, Ex. E, p. 12]; *see also* [R. 31, p. 4].

Accordingly, for the Court to determine whether the pasture from which the bull escaped

is an insured location under either Policy, the Court would be required to make several factual

findings, including but not limited to: what pasture the bull escaped from; whether an insured

(i.e., Brewer and/or West) owned or rented that pasture; whether the pasture was vacant land or

farm land; whether the land was used solely for the personal use of the insured. While the Court

could possibly ascertain some of the answers to these questions without the factual findings of

the Knox Circuit Court, as argued by State Farm, *see* [R. 31, p. 8], the Court finds it would be

unwise to do so given that some of the factual issues are already before the state court — factual

issues that may be implicated by the underlying negligence claim, which requires a

determination on duty, breach, causation, and injury. *See* [R. 30–1, p. 1 ("Whose bull, and *from

whence it came*, are factual issues that must be decided in the lawsuit … filed in Knox Circuit

Court.") (emphasis added)]; [R. 26, p. 3 (challenging the allegations in the state court complaint

as to who owned the bull and the pasture from which it escaped)]. In other words, the Court declines to make any factual findings that could potentially conflict with those of the Knox Circuit Court. This is especially true with regard to State Farm's duty to indemnify because even though the duty to indemnify is "separate and distinct" from the duty to defend, *James Graham Brown Found.*, 814 S.W.2d at 279, "[u]nder Kentucky law, whether an insurer has a duty to indemnify is question of law determined *after* the facts have been determined by a jury." *White Pine*, 2022 U.S. Dist. LEXIS 118416, at *15; *see also York v. Petzl Am., Inc.*, 353 S.W.3d 349, 353 (Ky. Ct. App. 2010) (citing *Robinson v. Murlin Phillips & MFA Ins. Co.*, 557 S.W.2d 202, 204 (Ky. 1977)) ("[T]he question of whether there should be indemnity is a question of law once the facts have been determined by the jury."). Stated another way, to determine whether State Farm has a duty to indemnify, the Court will likely be called upon to resolve factual issues that go to the merits of the state court claims. Accordingly, the Court finds factor one to weigh against exercising jurisdiction. *See also infra* Section II.D.(i).

### B. Factor Two

Factor two considers "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. This factor "is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 557 (citing *Travelers*, 495 F.3d at 271–72). "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* (citing *Biuminous*, 373 F.3d at 814; *Northland*, 327 F.3d at 454). As with the first factor, a split has developed among Sixth Circuit jurisprudence "concerning whether the district court decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.* (citations omitted). In

*Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the

latter." *Id.* It explained,

> The requirement that the judgment clarify the legal relationships of the parties is
> based upon our desire for the declaratory judgment to provide a final resolution of
> the discrete dispute presented. While the parties may have other tortious or
> contractual relationships to clarify in state court, our concern in considering the
> second *Grand Trunk* factor in such cases is with the ability of the federal
> declaratory judgment to resolve, once and finally, the question of the insurance
> indemnity obligation of the insurer. Thus, we focus only on whether a federal
> declaratory judgment will clarify the legal relationships presented to the district
> court.

*Id.*

Thus, in *Flowers*, the Court found that the second factor supported the district court's

exercise of jurisdiction, as it clarified the legal relations at issue in that case —"namely, the

contractual duties of indemnification owed by [the insurance company] to the [declaratory

defendant]." *Id.*  The Court noted that, "[w]hile [the declaratory action] did not clarify all of the

legal relationships at issue in the state court action, the district court's decision did not create any

confusion about the resolution of those issues," nor would it "confuse the state court's analysis of

[the] liability issues." *Id.* In more recent decisions, the Sixth Circuit again affirmed the lower

courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk*

factor where the declaratory action clarified the legal relationships of the parties to the

declaratory action, but not the state court litigation. *See United Specialty*, 936 F.3d at 398–99;

*Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 Fed. App'x 431, 438 (6th

Cir. 2019).

In this case, the requested declaratory judgment will resolve certain coverage issues

between State Farm, Brewer, and West, namely whether the "insured location" exclusion

forecloses State Farm's duty to defend and indemnify Brewer and West in the Knox Circuit

Court action. [R. 31, p. 9]. Resolution of these issues will not resolve the underlying liability issues presently in state court, *see Flowers*, 513 F.3d at 557, a point conceded by both parties. *See* [R. 26, p. 6; R. 31, p. 9]. However, the state court issues focus on negligence and damages, *see* [R. 26, p. 6; R. 27–1 (state court complaint); R. 31, p. 9], and those issues are not dependent on this Court's resolution of the coverage issues.[6] Thus, resolution of the coverage question will not likely complicate or confuse the state court liability issues. *Flowers*, 513 F.3d at 557. Accordingly, "[a]lthough the declaratory judgment will 'not resolve the relative rights of all parties in the state court litigation, it does determine whether the insurer must continue defending the insured party[.]" *United Specialty*, 936 F.3d at 399. As a result, this factor weighs slightly in favor of exercising jurisdiction.

### C.  Factor Three

The third *Grand Trunk* factor asks whether the declaratory judgment action "is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326. Typically, "[f]iling a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Flowers*, 513 F.3d at 558).  However, plaintiffs who file their suits only days or weeks before the corresponding state court action is filed, "and who seem to have done so for the purpose of acquiring a favorable forum," are subject to scrutiny under this factor. *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)) (internal quotation marks omitted). In other words, this factor

---

[6] Given the analysis of factor one, *see supra* Section II.A., the Court acknowledges that this conclusion required a closer call. However, for the purposes of this Motion, the Court will assume the state court issues are not dependent on the coverage issues currently at bar.

asks "whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* (quoting *Dale*, 386 F.3d at 789) (internal quotation marks omitted).

Typically, courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citations omitted). When no such evidence exists, courts often give the "benefit of the doubt" to the declaratory plaintiff and find that the third factor is neutral. *See, e.g.*, *Bituminous*, 373 F.3d at 814. The Sixth Circuit has also noted that "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers Indem. Co. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)); *see also United Specialty*, 936 F.3d at 399 (explaining that this factor "usually does not weigh heavily in the analysis").  Stated another way, "the lack of improper motive in filing alone cannot justify the exercise of jurisdiction when all the other factors weigh on the side of declining." *Bituminous*, 373 F.3d at 817 (citation omitted).

In the present case, State Farm argues that there is no evidence of procedural fencing because State Farm lacked an "improper motive in filing its suit[.]" [R. 31, p. 10]. In support of its contention, State Farm notes that it did not rush to file this suit to compete with a state court declaratory action (which does not exist in this case). *Id.* Instead, State Farm filed this suit over three months before the Knox Circuit Court action commenced. *Id.*; *see also* [R. 32, p. 4]. In Response, Defendants concede that "there are no facts directly evidencing that [State Farm] acted with an improper motive" in filing the present action. [R. 26, p. 8]; *see also* [R. 27, p. 8]. However, Defendants argue that State Farm could have easily filed for declaratory relief in Knox Circuit Court pursuant Kentucky's Declaratory Judgment Act, KRS 418.040. [R. 26, p. 8]. Defendants, therefore, contend that the third factor is, at best, neutral. *Id.*

13

The Court agrees that there is no evidence of procedural fencing in this action. As noted above, the present declaratory action was filed almost three months before the complaint was filed in the Knox Circuit Court action. Thus, as conceded by Defendants, *see* [R. 26, p. 8; R. 27, p. 8], there is no evidence to suggest that State Farm rushed to file this suit to get the upper hand. Further, while State Farm could have attempted to file for declaratory relief in state court, it was not obligated to do so. *See Flowers*, 513 F.3d at 558 ("While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives Scottsdale the right to do precisely that[.]"). The Court will therefore give the benefit of the doubt to State Farm that there was no improper motive behind its filing. However, as noted above, "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272). Accordingly, this third factor is neutral, and the Court will afford it little weight.

### D.  Factor Four

The fourth factor asks, "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. Like factors one and two, this factor focuses on the presence of novel or complicated state law or factual issues. *See, e.g.*, *United Specialty*, 936 F.3d at 400 ("For purposes of the fourth *Grand Trunk* factor, it is important simply to note that the question does not involve novel or complicated state-law or factual issues."). On this point, the Supreme Court has warned that "a district court might be indulging in '[g]ratuitous interference'" if it permits a federal declaratory relief action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court."

14

*Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283). "However, 'the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Id.* at 560 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)).

The Sixth Circuit has identified three subfactors to aid courts in considering this factor:

(1)  whether the underlying factual issues are important to an informed resolution of the case;
(2)  whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3)   whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)); *see also United Specialty*, 936 F.3d at 396 (reciting the three subfactors). The Court addresses each subfactor in turn.

### i.  Subfactor 1

Sub-factor one "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. District courts have declined to exercise jurisdiction when the state and federal cases involved the same factual issues. *Encompass Indem. Co. v. Gray*, No. 3:17–CV–713–RGJ, 2020 U.S. Dist. LEXIS 11313, 2020 WL 353236, at *7 (W.D. Ky. Jan. 21, 2020); *Am. Nat'l Prop. & Cas. Co. v. Wilson*, No. 18–116–DLB–CJS, 2019 U.S. Dist. LEXIS 70842, 2019 WL 1876797, at *7 (E.D. Ky. Apr. 26, 2019). As discussed above, *see supra* Section II.A., determination of the coverage issue in this case exposes the Court to a possibility of conflicting factual findings with the Kentucky court, and therefore weighs against exercising jurisdiction. *See Massachusetts Bay*, 759 F. App'x at 440 (citation omitted) ("Thus, it appears

that this case is dependent on factual findings by the state court, which weighs against exercising

jurisdiction."). Because factual findings by the Kentucky court could be in conflict and

duplicative with those in this Court, this subfactor counsels against exercising jurisdiction. *Id.*

### ii.  Subfactor 2

The second subfactor asks "whether the state trial court is in a better position to evaluate

those factual issues than is the federal court." *Bituminous*, 373 F.3d at 814 (citing *Roumph*, 211

F.3d at 968). *Flowers*, 513 F.3d at 560. Typically, this subfactor weighs in favor of exercising

jurisdiction "when the state law is clear and when the state court is not considering the issues."

*Flowers*, 513 F.3d at 560.  For example, "when an insurance company '[is] not a party to the

state court action, and neither the scope of insurance coverage nor the obligation to defend [is]

before the state court . . . a decision by the district court on these issues would not offend

principles of comity.'" *Id.* (quoting *Northland*, 327 F.3d at 454). However, when the declaratory

action involves novel issues of state law, it usually weighs against jurisdiction because "[w]e

generally consider state courts to be in a better position to evaluate novel questions of state law."

*Id.* (citing *Travelers*, 495 F.3d at 272).  However, "novelty is not the only concern." *Certain*

*Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, No. 12–39–ART, 2012 WL 3067579,

at *4 (E.D. Ky. July 27, 2012) (holding that while the state-law questions were not particularly

novel, "this case involves only questions of state law … indicat[ing] the possibility of friction

with the state court").  In some cases, the Sixth Circuit has placed greater emphasis on the state

court's superior ability to resolve questions of state law, "without immediately pointing to the

novelty of the state law issues." *Id.* (citing *Bituminous*, 373 F.3d at 815).

On this point, the Court notes that there are no novel state law or fact issues to be

resolved in this declaratory relief action. Further, the coverage issues are not before the state

court and State Farm is not a party to the state court action. *See* [R. 31, p. 12]. These facts weigh

in favor of exercising jurisdiction. *See Grange*, 565 F. Supp. 2d at 790. However, as noted

above, "novelty is not the only concern." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579,

at *4. The present case presents a question of state law, novel or not, and the state court's

superior ability to apply its own law weighs against exercising jurisdiction. *See Grange*, 565 F.

Supp. 2d 790 ("Since this is an insurance action, the state court is better situated to decide the

issue, weighing against jurisdiction."); *see also* [R. 26, p. 9]. Thus, subfactor two weighs in favor

of jurisdiction to the extent this case lacks any novel state law issues (and the state court is not

considering the issues), but it weighs against jurisdiction because it raises only issues of state

law, which state courts are in a better position to apply. *Id.*; *see also United Specialty*, 936 F.3d

at 401 (noting that although the "general presumption" that state courts are in a better position to

decide state law questions has less force when the state law is clear and the state court is not

considering the issues, "that does not necessarily mean that the concern is completely dispelled

in these circumstances"). Accordingly, this subfactor is, at best, neutral.

### iii.   Subfactor 3

Under the third subfactor, the Court must consider "whether there is a close nexus

between underlying factual and legal issues and state law and/or public policy, or whether

federal common or statutory law dictates a resolution of the declaratory judgment action."

*Bituminous*, 373 F.3d at 814–15 (citing *Roumph*, 211 F.3d at 968).  In other words, this subfactor

"focuses on whether the issue in the federal action implicates important state policies and is,

thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. For example, in

cases involving insurance contract interpretation issues, the Sixth Circuit has held that such

issues are "questions of state law with which the Kentucky state courts are more familiar and,

therefore, better able to resolve." *Id.* (quoting *Travelers*, 495 F.3d at 273) (internal quotation marks omitted). This is true because "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815) (internal quotation marks omitted); *but see Northland*, 327 F.3d at 454 (finding that the Court's exercise of jurisdiction would not create friction between the state and federal courts).

This Court finds that this case implicates state policy that could be frustrated by the exercise of jurisdiction. As the Sixth Circuit explained in *Flowers*, "[i]nterpretation of Kentucky insurance contracts is guided by state public policy. Despite the clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case." 513 F.3d at 561. This Court agrees with that analysis and the Sixth Circuit recently endorsed it in *United Specialty*, holding that "even in cases where state law has not been difficult to apply, this court has usually found that the interpretation of insurance contracts is closely entwined with state public policy." 936 F.3d at 401. The nexus between the legal issues in this case and state policy is clear. *See* [R. 26, p. 9 ("[T]here is undoubtedly a close nexus between the underlying fact and legal issues and Kentucky law and public policy.")]. Relatedly, the absence of any nexus between the state law issues presented and the federal forum is obvious —"[n]o federal-law questions are involved in the coverage issue" before the Court. *Id.*; *see also Massachusetts Bay* at 441 ("[N]o federal laws are at issue."); [R. 26, p. 9 ("No federal common law or statutory law … relate[s] to the present [action].")]. In other words, this case does not turn on federal law, but rather Kentucky's interpretation of insurance contracts—state law that is "guided by state public policy." *Flowers*, 513 F.3d at 561. Therefore, this subfactor weighs strongly against exercising jurisdiction, and

18

State Farm does not argue to the contrary. *See* [R. 31, p. 12 (conceding that subfactor three weighs against exercising jurisdiction)].

In sum, the first subfactor weighs against exercising jurisdiction; the second subfactor is neutral; and the third subfactor weighs strongly against exercising jurisdiction.  The fourth *Grand Trunk* factor is therefore best described as weighing against exercising jurisdiction.

### E.  Factor Five

The final *Grand Trunk* factor asks "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326. In many cases involving similar insurance coverage issues, the Sixth Circuit has held that an alternative remedy is available through a declaratory judgment under state law or an indemnity action in the state court at the conclusion of the liability proceedings. *See, e.g.*, *United Specialty*, 936 F.3d at 401–01; *Massachusetts Bay*, 759 Fed. App'x at 441–42; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 816–17. In those cases, the Court noted that the coverage issues involved questions of state law; they did not require application of federal common or statutory law. However, the Sixth Circuit has also acknowledged that "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Flowers*, 513 F.3d at 562. On this issue, Sixth Circuit "precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." *Id.* (citations omitted).

However, in *Flowers*, the Sixth Circuit clarified that, "rather than applying a general rule," the relevant inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.* In that case, the insurer sought a declaratory judgment that it had no duty to indemnify a therapist employed by the insured, a

19

mental health services provider, in a state emotional distress suit stemming from the therapist's sexual affair with a patient. *Id.* at 550–51. The Court noted that, under those circumstances, a state declaratory action would have been better than federal declaratory action because "Kentucky courts are in a superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment." *Id.* at 562. The Kentucky courts would also have been able to combine the two actions, thereby allowing a single judge to resolve all issues. *Id.* However, the Sixth Circuit also acknowledged that Kentucky law provided clear guidance on this issue, so a federal declaratory action was not "clearly inferior." *Id.* Moreover, an indemnity action would *not* have been a superior remedy, because the insurer had attempted to join the state court action but had been prevented from doing so. *Id.* Even if the insurer joined the state court action, it would be required to wait until the liability issues were resolved before determining its obligations to the therapist. *Id.* "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.*

More recently, however, the Sixth Circuit upheld the district court's determination that this factor weighed against exercising jurisdiction because a state court declaratory judgment action "would provide [the insurance company] with the same remedy it seeks in federal court, [and] the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401.

In the present case, Defendants argue that at least two alternative remedies exist: a declaratory action in state court and an indemnity action in state court. [R. 26, pp. 10–11]. State Farm counters that factor five "should now be considered neutral" given Kentucky Bar Association ("KBA") Ethics Opinion E–452 ("E-452"), which addresses potential conflicts of interest in a situation where the insured is represented by an attorney provided by the insurer, but

the insurer simultaneously contests coverage. [R. 31, pp. 14–15]; *see also* [R. 31–9, Ex. I (KBA Opinion E–452)]. Specifically, State Farm contends that E–452 explains why State Farm's intervention in the Knox Circuit Court action could create a conflict of interests given that State Farm is defending Brewer and West in the state court under a reservation of rights. *See* [R. 31, p. 6].

While the Court does not necessarily disagree with State Farm, the Court also recognizes that, at this time, any potential conflict of interest created by State Farm's intervention in the Knox Circuit Court action is purely speculative. In fact, and as noted by State Farm, *see* [R. 31, pp. 13–14], E–452 provides two ways in which conflicts of interests can be avoided in situations where the insurer defends the insured(s) under a reservation of rights. For example, despite its current representation of Brewer and West, State Farm could still properly intervene in the Knox Circuit Court action if the insurance coverage issues are bifurcated from the liability issues and stayed pending the determination of the liability issues. [R. 31–9, p. 1 (Question #3)]. A conflict of interests could also be avoided if State Farm intervenes, and Brewer and West are represented by separate counsel with respect to the coverage questions in the combined liability and coverage proceedings. *Id.* (Question #4). There is nothing to suggest that either of those options are unavailable to State Farm, and the Court is not persuaded by State Farm's argument to the contrary, which does not establish a concrete bar to State Farm's intervention but is grounded in what is most efficient for State Farm. *See* [R. 31, pp. 13–14].

In any event, even if E–452 foreclosed State Farm from intervening in the Knox Circuit Court action, a declaratory relief action in the state court is a better option than this federal declaratory action for several reasons. First, the Court generally agrees with State Farm that a state indemnity action at the end of the state court proceeding would, in many cases, be an

inferior remedy. *See* [R. 31, p. 14]; *see also Flowers*, 513 F.3d at 562 (finding that "[s]uch a delayed alternative would be worse, not better, than seeking a federal declaratory judgment"); *see also White Pine*, 2022 U.S. Dist. LEXIS 118416, at *37 ("[A]n indemnity action does not appear to be a better or more effective remedy because it would require [the insurance company] to wait until the liability issues are resolved before determining its obligations.").

Second, the specific coverage issue before the Court—whether the pasture from which the bull escaped is an insured location as defined by either the HO Polices or MH Policy— is a question of state law. *See* [R. 31, pp. 2–4]. True, Kentucky law may be clear on that issue, and a federal court could "confidently apply it without fear of creating conflicts with the Kentucky courts or intruding on their jurisdiction." *United Specialty*, 936 F.3d at 400. However, Kentucky courts remain in a superior position to interpret that state law and apply it to the facts of this case. *See, e.g.*, *Flowers*, 513 F.3d at 562. Thus, although a state declaratory action would provide State Farm with the same remedy that it seeks from this Court, "the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401; *see also Massachusetts Bay*, 759 Fed. App'x at 441 (acknowledging that "Tennessee courts are in a superior position to resolve questions of state law").

Third, the Court has no reason to believe that State Farm's interests would not be adequately protected in a state court declaratory action or that the state court is not in a position to "define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816–17 (quoting *Am. Hom Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)). Finally, the Court is not convinced by State Farm's argument that factor five favors exercising jurisdiction because "requiring State Farm to file a new action in state court would increase the cost of pursuing this action and result in unnecessary delay." [R. 31, p. 14]. In sum, State Farm's argument "that

federal adjudication of coverage would be more 'efficient' boils down to an attempt to make the litigation less costly for [itself] by avoiding state-court discovery and coming to a coverage determination more quickly." *Am. Nat'l Prop. & Cas. Co. v. Wilson*, No. 18–116–DLB–CJS, 2019 U.S. Dist. LEXIS 70842, at \*20–21 (E.D. Ky. Apr. 26, 2019). Such a "self-serving" argument, however, "fails to show … that the Kentucky court lacks alternative remedies which are better or more effective than [this] action" and "fails to explain why the state court is not capable of bifurcating the coverage issue from liability or otherwise ordering discovery in an efficient manner." *Id.* at 21; *see also White Pine*, 2022 U.S. Dist. LEXIS 118416, at \*38.  In fact, State Farm concedes that a "viable remedy for State Farm [is to] file a separate declaratory action in state court[.]" [R. 31, p. 14]. For all the reasons just stated, the Court agrees. Thus, the Court finds that a declaratory action in state court is a better remedy than this federal declaratory action. Accordingly, factor five weighs heavily against accepting jurisdiction.

### F.  Balancing the Factors

The Sixth Circuit has never articulated the relative weight of each *Grand Trunk* factor, acknowledging instead that the factors are not always equal. *Flowers*, 513 F.3d at 563; *Hoey*, 773 F.3d at 759. This Court has stated, however, that "[t]he most important consideration in exercising this discretion [under the Declaratory Judgment Act] is whether retaining jurisdiction interferes with state-court litigation." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at \*2. While this may be true, the Sixth Circuit has also indicated that "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on [the] facts of the case." *Hoey*, 773 F.3d at 759. In other words, the Court must balance the five *Grand Trunk* factors on a case-by-case basis.

In doing so, the Court is afforded "unique and substantial" discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In this way, the Declaratory Judgment Act—with its "textual commitment to discretion, and the breadth of leeway [the Supreme Court] always understood it to suggest"—is distinguished "from other areas of law in which concepts of discretion surface." *Id.* at 286–87. Thus, federal district courts possess "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286. Further, the "facts bearing on the usefulness of the declaratory remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* With this "unique and substantial" discretion in mind, the Court balances the five *Grand Trunk* factors, mindful that "[a]nother court might have made a different choice." *Hoey*, 773 F.3d at 760 (recognizing that "[a]nother court might have made a different choice—some judges regularly decline jurisdiction in cases like this").

In this case, the first factor weighs against exercising jurisdiction. The second factor weighs slightly in favor of accepting jurisdiction. The third factor—whether the declaratory plaintiff is engaging in procedural fencing—is neutral. Given the lack of evidence to suggest procedural fencing, the Court assigns this third factor little weight. *Massachusetts Bay*, 759 Fed. App'x at 439 (citation omitted). The fourth factor weighs against exercising jurisdiction. Lastly, under factor five, the availability of a better alternative remedy in state court weighs heavily against accepting jurisdiction.

Against these factors, only one of which slightly weighs in favor of exercising jurisdiction, the Court must balance "considerations of efficiency, fairness, and federalism." *Hoey*, 773 F.3d at 759. Here, these considerations weigh against exercising jurisdiction. First, the parties are involved in a common negligence and damages disputes in state court. *See* [R. 27–1, Ex. A (state court complaint)]. If the Court accepts jurisdiction, it forces the parties to engage

24

in litigation on two fronts "to receive a simple declaration of rights under an insurance contract—a matter that could easily be handled by the state courts that are more familiar with Kentucky insurance law in the first place." *Grange*, 565 F. Supp.2d at 791. In fact, the state court "is positioned to decide every issue amongst all the parties in this matter, allowing the parties to fight this battle on a single front." *Id.* Furthermore, an ongoing federal declaratory action could certainly create delays in the state court proceeding, or confusion as to scheduling, discovery, and other matters. It would also deprive a state court of the opportunity to interpret and apply its own law. Moreover, since the issue here is not one of federal law but rather of state regulated insurance contracts, an issue which this Court has no special interest, this Court is not a superior forum. By declining to exercise its substantial discretion to hear the case, this Court does not "rob" the insurance company of anything. *See id.* at 791–92. State Farm has an adequate (even superior) remedy via a state court declaratory judgment action or *possible* intervention in the state court proceeding. *Id.* at 792.

Further, the Court is mindful that it should not exercise jurisdiction under the Declaratory Judgment Act "unless it serves a useful, practical purpose." *Grange*, 565 F. Supp.2d at 792 (quoting *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949)). "[I]f our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Id.* at 785 (citations omitted). Accordingly, for the reasons set forth above, the Court finds that the *Grand Trunk* factors, when considered together and balanced against considerations of efficiency, fairness, and federalism, weigh against the exercise of jurisdiction.

**III.Conclusion**

Having balanced these five factors with "underlying considerations of efficiency, fairness, and federalism," and having considered the unique facts of this case, the Court will exercise its broad discretion to decline jurisdiction over this matter under the Declaratory Judgment Act. *See Wilton*, 515 U.S. at 286 (recognizing that district courts are afforded "unique and substantial" discretion under the Declaratory Judgment Act).

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.   Elaine Elliot's Motion to Dismiss [**R. 27**] is **GRANTED**.

2.   The Court declines to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**.

      The **Clerk of Court** shall **STRIKE** this case from the Court's active docket.

This the 4th day of August, 2022.

Claria Horn Boom
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY